Case 5:25-cv-00247    Document 26    Filed on 12/24/25 in TXSD    Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
December 24, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| ACHA FLORA ACHA, § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | CIVIL ACTION NO. 5:25-CV-00247 |
| § | |
| ORLANDO PEREZ, *et al.*, § | |
| § | |
| Respondents. § | |

## MEMORANDUM & ORDER

Pending before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), filed by Petitioner Acha Flora Acha. Petitioner is a Cameroonian national who fled persecution in Cameroon and has been held in immigration detention for nearly one year since her arrival in the United States in January of 2025. (Dkt. 1 at 6–7; *see* Dkt. 17 at 2, 3–4.) An immigration judge granted her withholding of removal under the Immigration and Nationality Act (INA) and deferral of removal pursuant to the Convention Against Torture (CAT) on May 28, 2025, prohibiting her removal to Cameroon. (Dkt. 1 at 7; Dkt. 17 at 4.) Petitioner has remained in custody while DHS has sought to remove her to another country and has filed this habeas action seeking release. (*See* Dkt. 1.) Having considered the parties' filings and the applicable law, the Court concludes that Petitioner's detention has become unreasonably prolonged in violation of her due process rights.

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED. Respondents are ORDERED to release Petitioner from custody on or before **December 26, 2025**, subject to

reasonable conditions of supervision. The Parties must notify the Court of the status of Petitioner's release by **5 P.M. Central Standard Time (CST) on Monday, December 29, 2025**.

## Background

Petitioner Acha Flora Acha ("Petitioner" or "Ms. Acha") is a 21-year-old citizen of Cameroon who fled her home country due to persecution she experienced at the hands of the Cameroonian government. (Dkt. 1 at 6–7; *see* Dkt. 17 at 3–5; Dkt. 19 at 2.) Ms. Acha was apprehended at the U.S.-Mexico border in January of 2025, after having entered without inspection. (*See* Dkt. 1 at 2–3, Attach. 1; Dkt. 19 at 8.)[1] After an asylum officer conducted a credible fear interview (CFI) and determined that Ms. Acha had a credible fear of torture in Cameroon, the Department of Homeland Security (DHS) placed Ms. Acha in removal proceedings by filing a Notice to Appear that was dated February 23, 2025. (Dkt. 1 at 3; Dkt. 17 at 3–4; *see* Dkt. 19 at 57 (U.S. Citizen and Immigration Services credible fear determination recognizing that Petitioner had established a reasonable probability of future torture.)

Subsequently, Ms. Acha applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) in April of 2025. (*See* Dkt. 1 at 7, Attach. 2; Dkt. 17 at 4; Dkt. 18 at 3.) Ms. Acha's application for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act (INA) and deferral of removal pursuant to CAT to Cameroon was granted by an Immigration Judge (IJ) on May 28, 2025. (Dkt. 18 at 11–14); *see* 8 U.S.C. § 1231(b)(3). In granting withholding of removal and deferral of removal, the IJ determined that Ms. Acha was more likely than not to suffer persecution or torture if removed to Cameroon. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16. Additionally, the IJ simultaneously entered an order of

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

removal in Ms. Acha's file. (*See* Dkt. 1 at 7; Dkt. 17 at 4–5.) Both Ms. Acha and DHS waived appeal of the IJ's decision. (Dkt. 1 at 7; Dkt. 17 at 4; Dkt. 20, Attach 1.)

Withholding of removal is a form of immigration relief that requires the Government not to remove a noncitizen to a country where she has shown a sufficient likelihood of persecution, although it does not guarantee relief from removal to an alternative country. 8 U.S.C. § 1231(b)(2)(E); *see generally* 8 U.S.C. § 1231(b) (providing the framework for designation). However, relatively few noncitizens granted withholding of removal have successfully been removed to alternative countries historically. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (addressing the contention that "DHS often does not remove an alien to an alternative country if withholding relief is granted" and "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country").

DHS policy has generally been to release noncitizens granted withholding of removal or CAT protection subject to conditions of supervision. *See* U.S. Dep't of Just., Detention and Release during the Removal Period of Aliens Granted Withholding of Removal or Deferral of Removal (Apr. 2, 2000), https://perma.cc/MDW6-RQS5. But in February of 2025, the Department of Homeland Security issued a policy directive instructing the Enforcement and Removal Operations (ERO) division of ICE to review the cases of noncitizens granted withholding of removal or protection under the Convention Against Torture (CAT) "to determine the viability of removal to a third country and accordingly whether the alien should be re-detained." February 18, 2025, DHS Policy Directive on Expedited Removal and Nondetained Docket (Feb. 18, 2025), https://perma.cc/T8TV-GT84; *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass. 2025).

Ms. Acha has now been in ICE custody for nearly one year since she entered in January of 2025. (*See* Dkt. 1 at 7; Dkt. 17 at 3–4.) On June 25, 2025, ERO submitted a citizen acceptance packet to the Panama Consulate, which was denied the next day. (Dkt. 20, Attach. 1 at 2.) On October 9, 2025, she received a Post Order Custody Review in which ICE determined that it would not release Ms. Acha and instead initiated the process of coordinating removal for Ms. Acha to a "third country," that is, a country other than the United States or a noncitizens home country. (Dkt. 18 at 3–8.) On October 16, 2025, Respondents served Ms. Acha with a 120-day Notice to Alien of Interview for Review of Custody. (Dkt. 20, Attach. 1 at 2.) On October 27, 2025, ERO submitted a citizen acceptance request packet to the Belize consulate, and on November 7, 2025, ERO submitted a citizen acceptance request packet to the Costa Rica Consulate. (*Id.*) Both requests were denied within a week. (*Id.*)

Ms. Acha subsequently filed the instant habeas action on December 2, 2025. (Dkt. 1.) Her petition asserts three claims for relief. (*Id.* at 14–15.) First, she claims that her detention is in violation 8 U.S.C. § 1231(a) of the Immigration and Nationality Act. (*Id.*) Second, she claims that her detention has become indefinite in violation of the Due Process Clause of the Fifth Amendment because her removal is not reasonably foreseeable. (*Id.*) Third, she argues that removal to an undisclosed third country would violate the Due Process Clause of the U.S. Constitution. (*Id.*) Ms. Acha asks the Court to grant declaratory and injunctive relief and order her immediate release from immigration detention. (*Id.* at 16.)

Respondents have moved to dismiss Petitioner's habeas petition for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. (Dkt. 17 at 1); *see* Fed. R. Civ. P. 12(b)(1), (6). Respondents argue that Ms. Acha's removal is reasonably foreseeable

because "ERO is actively working to identify and secure acceptance from a third country for her removal." (Dkt. 13 at 4.)

As of the date of this Order, Petitioner remains detained at the Laredo Processing Center in Laredo, TX, and there is no evidence that any country has communicated that it will accept Ms. Acha. (*See* Dkt. 1 at 4; Dkt. 17 at 4; Dkt. 23 at 6.)

## Legal Standard

### A.  28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 8 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 8 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 8 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687–8 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory

authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id*. at 699 (citing 8 U.S.C. § 2241(c)(3)).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citation omitted).

### B. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "lack of subject-matter jurisdiction" Fed. R. Civ. P. 12(b)(1). The burden of establishing subject-matter jurisdiction rests on the Petitioner. *See Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

### C. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). But when a party has filed for the writ of habeas corpus "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 269 n.14 (1978)).

## Discussion

As a threshold matter, the Court refrains from considering the merits of Ms. Acha's Third Claim because it appears premature. (*See* Dkt. 1 at 15.) Ms. Acha's Third Claim is that Respondents' policy on third-country removals, which allows a non-citizen to be removed without affording them with notice of the country of intended removal or an opportunity to be heard on a fear-based claim related to that country, violates her right due process rights. (Dkt. 1 at 15.) However, Respondents do not appear to currently have any third countries to which they are actively trying to remove petitioner nor any countries that have agreed to accept Petitioner, therefore this claim appears premature at the current moment. (*See* Dkt. 17 at 4; Dkt. 23 at 6, Dkt. 20, Attach. 1.) Thus, Petitioner's Third Claim regarding the process she is due prior to removal to a third country remains pending with this Court.

The Court considers Petitioner's claims that her post-removal-period detention by immigration authorities has become unreasonably prolonged in violation of the INA and her due process rights. (Dkt. 1.) Respondents counter that Petitioner's continued detention is lawful pursuant to the framework established by the Supreme Court for post-removal detention in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that Petitioner's claims should be dismissed because there is a significant likelihood that Petitioner will be removed to a third country in the reasonably foreseeable future. (Dkt. 17.) The Court addresses each of these arguments in turn after first examining its jurisdiction over Petitioner's claim.

**A. Subject Matter Jurisdiction**

The primary federal habeas corpus statute confers federal subject-matter jurisdiction over habeas petitions filed by noncitizens who claim they are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas,* 533 U.S. at 687. However, the REAL ID Act of 2005 divested federal courts of jurisdiction over various

important categories of immigration cases. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005); *codified as* 8 U.S.C. § 1252. Specifically, district courts may not review challenges to final orders of removal, the Attorney General's discretionary judgment to detain a noncitizen, or questions of law and fact "arising from rising from any action taken or proceeding brought to remove an alien from the United States." *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (e); *Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Additionally, no federal court may review claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

But the Supreme Court has recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)). Moreover, the Supreme Court has rejected a broad reading of these provisions, cautioning that that "[i]nterpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id.* at 293. Therefore, federal courts retain "jurisdiction to review [a noncitizen's] detention insofar as that detention presents constitutional issues," *Oyelude,* 125 F. App'x at 546; *see also Nielsen v. Preap,* 586 U.S. 392, 401–02 (2019); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Moreover, "Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to

'execute removal orders' and thus does not implicate section 1252(g).'" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted); *see also Sagastizado v. Noem (Sagastizado II)*, 2025 WL 2957002, at *7–8 (S.D. Tex. Oct. 2, 2025). Likewise, "where review of an agency determination involves neither a determination as to the validity of the [petitioner's] deportation order[] or the review of any question of law or fact arising from their deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a bar to the district court's review." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022).

The Court now only considers Ms. Acha's post-removal-period detention while DHS attempts to remove her to a third country rather than any aspect of her underlying removal order or the decision by DHS to execute it. Thus, her claim is not barred, and the Court retains jurisdiction to determine whether her continued detention by DHS as it attempts to remove her to a third country violates her due process rights. *See Villanueva v. Tate*, 2025 WL 2774610, at *5–6 (S.D. Tex. Sep. 26, 2025) ("challenges [to] the government's authority to hold [Petitioner] in detention indefinitely while it tries to find a third country that will accept him . . . [are] not barred.")

### B.  Limits on Post-Removal-Period Detention Under *Zadvydas*

Ms. Acha argues that that her post-removal-order detention by immigration authorities has become unreasonably prolonged in violation of her due process rights and the INA given that her detention has stretched for over 208 days, or nearly 7 months, since her removal order became final on May 28, 2025. (S*ee* Dkt. 1.)  Pursuant to § 1231, once an IJ issues a removal order and that order becomes "final," the Attorney General has ninety days to affect the detainee's departure from the United States. *See* 8 U.S.C. § 1231(a)(1)(A); *Andrade v. Gonzales,* 459 F.3d 538, 543 (5th Cir. 2006) *cert. denied*, 549 U.S. 1132 (2007). The beginning of the removal period is calculated to be the latest of "(i) The date the order of removal becomes administratively final. (ii)

If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). In general, during this 90-day removal period, the detainee must remain detained. 8 U.S.C. § 1231(a)(2). If the detainee is not removed within that 90-day period, she may become eligible for supervised release until removal can be accomplished or DHS may continue to detain her for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 385 (2005); 8 U.S.C § 1231(a)(3).

But post-removal-period detention must comport with constitutional limits. The Supreme Court has recognized "permitting indefinite detention of an alien would raise a serious constitutional problem" and that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690.  Thus, the Supreme Court held in *Zadvydas* that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal.  *Id.* at 699. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citations omitted).

In order to guide lower courts reviewing the reasonableness of continued detention, the Supreme Court determined that there is a presumably reasonable period of six months of detention from the time that a removal order becomes final.[2] *Id.* at 701. After six months have elapsed, once a noncitizen provides "good reason to believe that there is no significant likelihood of removal in

---

[2] Courts, including this one, have understood the six-month presumption to be a period of 180 days which comports with DHS's post-removal custody review procedures. *See Sagastizado II*, 2025 WL 2957002, *16; *Villanueva*, 2025 WL 2774610, at *2; 8 C.F.R. § 241.4(k)(2)(ii).

the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the respondents do not offer sufficient rebuttal evidence once a habeas petitioner has made such a showing, then the court should grant the writ and order the habeas petitioner released under the *Zadvydas* framework. *See id.*; *but see Andrade*, 459 F.3d at 543–44 (finding that petitioner had failed to meet his initial burden when he offered "nothing beyond conclusory statements").

The parties do not dispute that Ms. Acha has been detained for over six-months since her final order of removal was entered. (*See* Dkts 1, 17, 23.) Thus, having surpassed the six-month presumption of reasonableness under *Zadvydas*, the Court's analysis focuses on whether Ms. Acha has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and whether Respondents have responded "with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701.

### 1. Foreseeability of Petitioner's Removal to a Third Country

The Court now turns to whether Petitioner has provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether the Respondents have submitted sufficient evidence to rebut that showing. Respondents first argue that Ms. Acha has failed to meet her burden because "Petitioner has merely suggested that she is unlikely to be removed." (Dkt. 17 at 5.) The Court rejects this, finding that Ms. Acha has met her burden to provide a "good reason" to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.

Ms. Acha has submitted allegations that her removal is not reasonably foreseeable because "[t]he IJ did not designate any country for Ms. Acha's removal; removal to Cameroon is barred by withholding; and Ms. Acha does not have legal residence (or other legal status) in any other

country." (Dkt. 23 at 8; *see also* Dkt. 1.) Moreover, Ms. Acha has stated that Respondents have not identified any current countries to which they intend to remove Ms. Acha, making her removal not reasonably foreseeable. (Dkt. 23 at 9 – 10).

For a petitioner to show that there is "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" the petitioner is not required to "show the absence of *any* prospect of removal— no matter how unlikely or unforeseeable," *See Gomez v. Mattos*, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (quoting *Zadvydas*, 533 U.S. at 701–02). The fact that Ms. Acha has been granted withholding of removal from her native country of Cameroon in of itself makes her likelihood of removal from the United States far less likely. *See Johnson,* 594 U.S. at 537 ("only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country"); *Zavvar v. Scott*, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025) ("A grant of withholding of removal 'substantially increases the difficulty of removing" an individual." (quoting *Munoz-Saucedo v. Pittman,* 789 F. Supp. 3d 387, 398 (D. N.J. 2025))).

Moreover, as Ms. Acha asserts, the fact that DHS has not identified a third country that is willing to accept her makes her removal even more impracticable. *See Trejo v. Warden of ERO El Paso East Montana*, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding removal not reasonably foreseeable because "ICE has not identified a third country that will accept him."). Accordingly, under similar factual circumstances to Ms. Acha, courts have found that a petitioner has met their burden by offering proof of a grant of withholding of removal and a lack of assurances that a third country will accept them. *See, e.g., Salazar-Martinez v. Lyons*, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (citations omitted); *Trejo*, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025); *Garcia-Aleman v. Thompson*, 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025),

*report and recommendation adopted*, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025). Therefore, Ms. Acha's evidence that she remains detained with her removal to her native country of Cameroon prohibited by law and no assurances that she can be removed to a third country is sufficient for the Court.

Thus, upon finding that Ms. Acha has provided a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Court turns to whether Respondent's have provided evidence to rebut that showing. Respondents argue that "ERO is actively working to identify and secure acceptance from a third country for her removal." (Dkt. 17 at 6.) But by Respondent's own admission, "ERO has submitted Requests for Acceptance of Alien to three separate countries" all of which have been denied. (*See* Dkt. 17 at 6; Dkt. 20, Attach. 1.)

Respondents have had over 208 days to work on removing Ms. Acha to a third country and have nothing to show for it. Not only is this a far cry from the evidence required to rebut Ms. Acha's showing, it raises serious concerns about what Respondents have been doing for the last seven months that Ms. Acha has remained detained. This lack of any progress towards removal while Ms. Acha has remained detained indicates that her removal is not reasonably foreseeable under even the most generous understanding of the standard. *See Misirbekov v. Venegas,* 2025 WL 3033732, at *1, *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for a petitioner detained over nine months post-removal). "[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted).

Thus, Ms. Acha's continued detention violates due process because there is no significant likelihood of her removal in the reasonably foreseeable future. Ms. Acha has been detained for

nearly a year, with over 208 days of that detention occurring during the post-removal-period. During all that time, it appears that Respondents have made few efforts and attained no meaningful progress in effectuating her removal to a third country from their own admissions. The constitution forbids such an infringement on liberty under due process. Therefore, Ms. Acha's continued detention is unconstitutional and in violation of 8 U.S.C. § 1231.

## Conclusion

For the forgoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED. Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, (Dkt. 17), is DENIED.

Respondents are hereby ORDERED to release Petitioner from custody on or before **December 26, 2025**, subject to reasonable conditions of supervision. Respondents are also ORDERED to notify Petitioner's counsel of the exact location and exact time of her release as soon as practicable and **no less than three hours before release**. The Parties must notify the Court of the status of Petitioner's release and any conditions of supervision by **5 P.M. Central Standard Time (CST) on Monday, December 29, 2025.**

The Court's prior Order, (Dkt. 8), that Respondents must provide at least ten (10) days' written notice, including the name of the proposed country of removal and confirmation that the third country has agreed to accept Petitioner, to Petitioner, Petitioner's counsel, and this Court, prior to removal., REMAINS IN PLACE. The Court further ORDERS that Petitioner cannot be re-detained without a material change in circumstances.

IT IS SO ORDERED.

SIGNED this December 24, 2025.

_____
Diana Saldaña
United States District Judge